IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* Richard Lardner, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| SMITH & NEPHEW INC., and METRO MEDICAL EQUIPMENT & SUPPLY, INC., | ) ) ) ) |
| Defendant. | ) ) |

Case No. 2:17-cv-02013-JPM-egb

### ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS

Before the Court is Defendants Metro Medical Equipment & Supply, Inc. ("Metro Medical") and Smith & Nephew, Inc. ("Smith")'s Motions to Dismiss, filed on January 22, 2018. (ECF Nos. 18; 20.) For the reasons stated below, Plaintiff's factual assertions in the complaint are sufficient to withstand the pleadings requirements for fraud. (ECF No. 1.) The Motions to Dismiss for failure to state a claim upon which relief can be granted are DENIED.

**I.   BACKGROUND**

**Factual Background**

This is an action for damages and civil penalties under the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729. (EFC No. 1 at ¶ 1.) Plaintiff ("Relator") alleges that Smith, an international medical equipment manufacturing company, uses Metro Medical as a sham small business non-manufacturer to procure federal contracts. (Id. at ¶¶ 2;4.) Smith sells its

TRUCLEAR system for hysteroscopies through Metro Medical. (Id. at ¶ 4.) Plaintiff asserts that Metro Medical submits a product quotation and collects payment from the purchasing government agency before transmitting most of those funds to Smith. (Id.) Plaintiff also argues that Metro Medical's is an affiliate of Smith and is therefore ineligible for the small business government contracts it has been awarded. (Id.)

Relator has been involved with medical device sales for over twenty years and was working at Smith in 2006. (ECF No. 1 at ¶ 72.) His job included selling the TRUCLEAR system which is how Plaintiff claims he learned of Defendants' scheme. (Id. at ¶ 74.) Relator alleges that during a specific sale made on July 31, 2010 with the VA Palo Alto Health Care System, Metro Medical required approval from Smith before they would be able to change the pricing. (Id. at ¶¶ 88-90.) Plaintiff listed a series of more than ten government contracts that he claims are representative of the types of fraudulently induced contracts outlined above. (Id. at ¶¶ 99-100.)

Plaintiff asserts that Metro Medical and Smith conspired to violate the FCA and obtain payments for small business contracts and domestic manufacturing contracts for which they would not otherwise be eligible. (ECF No. 1 at ¶ 138.) Plaintiff alleges Smith has been involved in a second scheme of false representations to the Government by claiming Smith's Hysteroscopic Fluid Management System is manufactured in the United States when it is actually manufactured in Germany. (Id. at ¶ 5.) Relator argues Metro Medical fraudulently induced the award and payment of federal government contracts for small businesses by representing it was eligible despite their affiliation with Smith. (Id. at ¶ 6.)

  B.  **Procedural Background**

2

Plaintiff Richard Lardner filed the initial Complaint under seal against Defendants Smith and Metro Medical on January 9, 2017. (ECF No. 1.) Pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(4)(B), the United States has the option of intervening after the complaint has been filed but decided not to, as stated in its notice to the Court on September 20, 2017. (ECF No. 6.) This Court then ordered the Complaint to be unsealed and served upon the Defendants, and that the seal be lifted as to all matters after that Order filed on September 20, 2017. (ECF No. 7.)

Defendant Smith filed a Motion to Dismiss for Failure to State a Claim on January 1, 2018. (ECF No. 18.) Plaintiff's Response was filed on February 20, 2018 (ECF No. 37) followed by Smith's Reply on March 6, 2018. (ECF No. 42.) Defendant Metro Medical also filed a Motion to Dismiss under Rules 12(b)(6) and 9(b) on January 22, 2018. (ECF No. 20.) Plaintiff's Response was on February 20, 2018 (ECF No. 38) followed by Metro Medical's Reply on March 3, 2018. (ECF No. 43.) The Court has considered all six of the filings related to both Motions to Dismiss.

On February 9, 2018 both Defendants submitted a joint Motion to Stay Discovery until the Court ruled on the Motions to Dismiss. (ECF No. 33.) Although not formally granted, the Motion to Stay will be denied as moot in conjunction with this Order. Since the Motions to Dismiss are denied, a telephonic scheduling conference will be set to establish litigation deadlines and the trial date.

## II.     LEGAL STANDARD

### A. Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." As such, a Rule 12(b)(6) motion permits the "defendant to

test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. However, a plaintiff without facts who is "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012).

B. Federal False Claims Act Pleading Standard

Under Rule 9(b), FCA allegations must be pled with particularity to ensure that "defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts." U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co., 874 F.3d 905, 914 (6th Cir. 2017). Plaintiff's Complaint alleges causes of action under the FCA's first three provisions, 31 U.S.C. §§ 3729(a)(1)(A), (B) & (C). (See ECF No. 1.) In the Sixth Circuit the elements for the first two FCA provisions require the plaintiff to sufficiently plead: [1] "that the defendant [made] a false statement or created a false record [2] with actual knowledge, deliberate ignorance, or reckless disregard for the truth or falsity of the information; [3] that the defendant … submitted a claim for payment to the federal government; … and [4] that the false statement or record [was] material to the Government's decision to make the payment sought in the defendant's claim." U.S. ex rel. Sheldon v. Kettering Health Network, 816 F.3d 399, 408 (6th Cir. 2016) (quoting, in part, U.S. ex rel. SNAPP, Inc. v. Ford Motor Co., 618 F.3d 505, 509 (6th Cir. 2010) ("SNAPP II")).

To address the FCA's "false record or statement" element, the Sixth Circuit borrows from the standard applied to common law and securities fraud cases, requiring that the complaint set out: "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's [scienter], and (4) the resulting injury." U.S. v. SavaSeniorCare, LLC, Nos. 3:11- 00821, 3:15-00404, 3:15-01102, 2016 WL 5395949, *13 (M.D. Tenn. Sep. 27, 2016). To address the FCA's "false or fraudulent claim" element, the Sixth Circuit requires relator to allege the details of the scheme coupled with either details of actual claims submitted to the Government or "facts which support a strong inference that a claim was submitted." U.S. ex rel. Chesbrough v. VPA, P.C., 655 F.3d 461, 471 (6th Cir. 2011).

**III. ANALYSIS**

Both Smith and Metro Medical argue that Plaintiff failed to plead sufficient facts for five issues: (1) that Metro Medical and Smith are affiliates (ECF No. 21 at PageID 156; ECF No. 18-1 at PageID 137,) (2) that Metro Medical is not a small business nonmanufacturer (ECF No. 21 at PageID 160; ECF No. 18-1 at PageID 134,) (3) that the place of manufacture is not the United States (ECF No. 21 at PageID 162; ECF No. 18-1 at PageID 142,) (4) that a conspiracy to defraud exists between Defendants (ECF No. 21 at PageID 163; ECF No. 18-1 at PageID 144,) and (5) that the Government would not have paid if they were aware of the alleged false representation. (ECF No. 21 at PageID 164; ECF No 18-1 at Page ID 139.) To analyze the two Motions to Dismiss, the Court will turn to the supporting information in Plaintiff's complaint and argued in their response to the motions for each of the five issues above.

**1) Claim that Metro Medical and Smith are Affiliates**

Plaintiff directs this Court to regulations describing how the Small Business Administration ("SBA") determines whether two entities are affiliates. (ECF No. 38 at PageID 257.) The regulation articulates that "[i]n determining whether affiliation exists, SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to find affiliation." 13 C.F.R. 121.103(a)(5). Control is, however, a critical factor in determining affiliation: "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists." 13 C.F.R. 121.103(a)(1). Plaintiff argues that Smith had a high degree of

control over Metro Medical which would be sufficient to demonstrate that affiliation exists. (ECF No. 38 at Page ID 257.)

In their Complaint, Plaintiffs state that Metro Medical could only use Smith sales representatives to interface and solicit contracts with the VA, and that approval from Smith management was required to give discounts. (ECF No. 1 at ¶¶ 76, 80-84, 86-91, 93-97, 110.) The Complaint describes a transaction with the VA Palo Alto Health Care System where Metro employees refused to give a discount without Smith management approval. (Id. at ¶¶ 88-92.) Specifically, the Complaint alleges Metro Medical employees state they "would need written approval" from Smith management for both pricing and related discounts. (Id.) Additionally, the Complaint details over fifteen contracts through which Smith allegedly exerted control over Metro Medical. (ECF No. 1 at ¶ 100.) If a company cannot provide their own pricing without express permission from a third company, that indicates the third company is able to control aspects of the original company's business. Because these allegations detail specific ways that Smith controlled the pricing and business operation of Metro Medical, the allegations are plead with sufficient particularity to plausibly allege Smith exerted enough control over Metro Medical to make the two companies affiliates.

**2) Claim that Metro Medical is not a Small Business Nonmanufacturer**

A company can qualify as "small business nonmanufacturer" only if it: "(i) Does not exceed 500 employees; (ii) Is primarily engaged in the retail or wholesale trade and normally sells the type of item being supplied; (iii) Takes ownership or possession of the item(s) with its personnel, equipment or facilities in a manner consistent with industry practice; and (iv) Will supply the end item of a small business manufacturer, processor or producer made in the United States, or obtains a waiver of such requirement." 13 C.F.R. § 121.406(b). The number

of employees a business has includes the number of employees of its affiliates. 13 C.F.R. 121.106(b)(4). For the reasons above, it is plausible that Defendants are affiliates and would therefore have over 500 employees since Plaintiff claimed Smith has 15,000 employees worldwide. (ECF No. 1 at ¶ 16.) This alone would make it plausible that Metro Medical could not qualify as a small business nonmanufacturer.

Plaintiff further shows it is plausible that Metro Medical could not qualify as a small business nonmanufacturer because they allege facts suggesting that Metro Medical never took possession of the goods sold to the Government. (See ECF No. 1 at ¶ 76.) The Complaint includes the claim that "[t]he contract pricing, sale, delivery, and set up of the TRUCLEAR system took place through Smith & Nephew personnel" and that Smith sales representatives "conducted all on site and direct interactions with the government procurement officer." (Id.) Taken together, these claims in the Complaint assert facts that make it plausible that Metro never took ownership of the items and therefore would not qualify as a small business nonmanufacturer.

### 3) Claim that the Place of Manufacture was not the United States

The Buy American Act, 41 U.S.C. § 8302, requires supplies that have been manufactured in the United States unless it would be against public interest or the cost is unreasonable. Relator contends that Defendants represented that their products, including the Fluid Management System, are manufactured in the United States but are actually made in Germany. (Id. at ¶¶ 121-123.) These claims go beyond the conclusory statement that Defendants misled the Government into thinking they qualified for small business contracts; they assert specific facts about what Defendants said relating to the place of manufacture.

Combining those statements with the specific contracts noted above (id. at ¶ 100) would provide Defendants sufficient notice of as to the nature of the claims against them.

### 4) Claim that Defendants Conspired to Violate the FCA

Defendants argue that Plaintiff's conspiracy allegation fails because no specific Smith or Metro Medical employees involved in the alleged conspiracy have been identified. (ECF No. 18-1 at PageID 145.) Plaintiff must "identify with specificity the individuals involved in the alleged fraud." U.S., ex rel. Carroll v. JFK Med. Ctr., No. 01-8158-CIV, 2002 WL 31941007, at *5 (S.D. Fla. Nov. 15, 2002). The Sixth Circuit, however, has clarified that "corporations are included within the definition of 'persons' under the FCA." Kreipke v. Wayne State Univ., 807 F.3d 768, 782 (6th Cir. 2015) (citing Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 780-83 (2000)).

Here, Plaintiff asserts that Smith and Metro Medical conspired to commit violations of 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B). (ECF No. 37 at ¶ 138.) This allegation is specific enough to establish the individuals involved in the alleged fraud given how the Sixth Circuit has interpreted "persons" under the FCA. Sister courts in this Circuit have articulated that the critical question under Rule 9(b) is whether the defendant was put on notice of the alleged conspiracy, and that requiring specific people involved with the misconduct is overreaching. See U.S. ex rel. Roby v. Boeing Co., 184 F.R.D. 107, 110 (S.D. Ohio 1998).

Plaintiff's complaint alleges details of a conspiracy that put Defendants on notice for the purpose of Rule 9(b). In addition to asserting that a conspiracy to defraud the government existed between Smith and Metro Medical, Relator highlights specific examples such as the contract entered into with the VA Palo Alto Heath Care System detailed above. (ECF No. 1 at

9

¶¶ 88-92.) Taken together, the assertion of a conspiracy and example of how the conspiracy worked meet the pleadings standards for Defendants' Motions to Dismiss.

### 5) Claim that Government would not have Paid if Aware of the Alleged Fraud

Defendants argue that Relator only provided a single conclusory allegation that the government would not have paid money if they knew of Smith and Metro Medicals alleged misrepresentation. (ECF No. 21 at PageID 165.) The Supreme Court has articulated the definition of materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." Universal Health Servs., Inc. v. U.S. ex rel. Escobar, 136 S. Ct. 1989, 2002 (2016). Materiality must be asserted with plausibility and particularity under Rules 8 and 9(b). (Id. at 2004, n.6).

The Complaint set out the requirements for a small business to be eligible to bid on and get small business set-aside contracts. (ECF No. 1 at ¶¶ 29-58.) It also referenced 15 U.S.C. § 632(w)(1), which articulates that there is a presumption of loss to the government when it is established that a business concern other than a small business "willingly sought and received the award by misrepresentation." This presumption helps establish that such a misrepresentation is material because it suggests the government would not enter into a contract for what the United States Code considers a loss. Materiality is also present when the defendant "knew or had reason to know that the recipient of the representation attaches importance to the specific matter." Escobar, 136 S.Ct. at 2003. Plaintiff asserts Metro Medical had to go through the process to apply for small business contracts including verifying their eligibility. (See ECF No. 1 at ¶ 48.) A company that goes through the process of following the requirements to obtain small business contracts should know that the government would attach importance to the accuracy of information provided. This helps

10

support Relator's argument that the allegedly misleading statements Metro Medical made about being a small business are material.  At the least, Plaintiff has alleged with particularity why Metro Medical's statements to the government could be material for the government granting Metro Medical various contracts.

IV.     CONCLUSION

Plaintiff has included factual assertions plead with both particularity and plausibility from their claims to survive both Motions to Dismiss under Rules 12(b)(6), 8, and 9(b).  For the above reasons both Motions to Dismiss are DENIED and a telephonic scheduling conference will be set following this Order.

**IT IS SO ORDERED**, this 17th day of September, 2018.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE